## LEGAL SERVICES AGREEMENT

This Legal Services Agreement ("Agreement") is made and entered into by and between **Data Search NY, Inc., a New York corporation, d/b/a TRAKAmerica** located at 999 Vanderbilt Beach Road, Suite 607, Naples, Florida 34108 (hereinafter referred to as "TRAKAmerica") and **Kirschenbaum & Phillips, P.C.**, with offices located at 3000 Hempstead Turnpike, 4th Floor, Levittown, NY 11756 (hereinafter referred to as "Law Firm") as of the _27_ day of _OCT_, 2011.

WHEREAS, TRAKAmerica provides law firm selection and account receivable management services for its clients ("Clients") seeking to engage counsel throughout the United States for collection of their delinquent and unpaid accounts (hereinafter referred to as "Accounts"); and

WHEREAS, Law Firm is authorized to practice law in the State(s) of _NEW YORK_ and has a sufficiently qualified staff to perform the collection of Accounts in the above-referenced state(s); and

WHEREAS, Law Firm represents that it has experience and is engaged in the business of providing debt collection and/or recovery services for delinquent accounts either representing a direct issuer or debt-buyer client.

NOW, THEREFORE, in consideration of the mutual covenants and promises contained herein, it is agreed to by and between the parties as follows:

### I. SCOPE OF ENGAGEMENT.

TRAKAmerica, on behalf of its Clients, will, from time to time and on a non-exclusive basis, engage Law Firm to collect on certain delinquent Accounts.

Law Firm is expected to enhance and modify the services provided hereunder as necessary to take advantage of technological advances and to adapt to changes in applicable laws and regulations consistent with prevailing practices in the collection and recovery industries or among TRAKAmerica's competitors.

### II. STANDARD OF CARE.

Law Firm shall use its best efforts in the performance of the services for which it is engaged. Law Firm represents that its entry into this Agreement and its performance of the services required thereunder shall comply with all applicable Federal, State, County, and local laws, regulations, ordinances, and codes, including, but not limited to, the Fair Debt Collection Practices Act and the Fair Credit Reporting Act and the procurement of any licenses if applicable, in the performance of the services and any other obligations hereunder, in the state(s) or jurisdiction(s) where Law Firm will be collecting Accounts placed by TRAKAmerica on behalf of its Clients. If at any time, TRAKAmerica, in good faith, determines that conduct of any Law Firm personnel is not in the best interests of any TRAKAmerica client, then TRAKAmerica will give notice to that effect. Once provided that notice, the Law Firm within a reasonable amount of time (not to exceed 5 business days)

will investigate the matters stated, discuss findings with TRAKAmerica and resolve the identified issue. In conjunction with such services, Law Firm agrees to the following specific items; all of which with the exception of item (C) shall survive any termination of this Agreement:

A. Law Firm shall maintain collection files in accordance with and pursuant to federal, state and local laws and shall follow all policies, instructions and guidelines, including but not limited to all requirements as set forth in the TRAKAmerica Supplier Work Standards manual (as may be amended from time-to-time), which is attached hereto as "**Schedule A**" and incorporated herein, to the extent consistent with applicable laws and regulations. In addition, Law Firm shall maintain records for all Accounts placed by TRAKAmerica for its clients for a period of seven (7) years. Such policies, instructions and guidelines may be updated or revised by the provision of notice thereof in accordance with Section XI below, and the failure of Law Firm to terminate this Agreement within thirty days (30) of receipt of such notice under Section XI shall be deemed acceptance of such updates or revisions;

B. Law Firm shall, on request by TRAKAmerica, within a reasonable time, in a format prescribed by TRAKAmerica, furnish information in its files regarding the Accounts;

C. Law Firm shall, as and if required by law, forward to the debtor any and all required notices on all Accounts, including any notices required to be sent on behalf of Clients;

D. Law Firm shall report to TRAKAmerica on the status of Accounts at times and in a manner and in a form required by TRAKAmerica as set forth in the TRAKAmerica Supplier Work Standards;

E. Law Firm shall, on request by TRAKAmerica, within a reasonable time, in a form prescribed by TRAKAmerica, furnish performance or production analysis reports on all Accounts;

F. Law Firm must obtain permission from TRAKAmerica to refer Accounts to other outside counsel, and such referrals shall be contingent on such other counsel's execution of an engagement letter in a form acceptable to TRAKAmerica;

G. Law Firm must close and return any and all Accounts as directed by TRAKAmerica, regardless of the status of any such Accounts, and shall cooperate fully and promptly with TRAKAmerica and/or successor counsel to ensure that collection efforts are neither delayed nor impeded. Compensation on such accounts will not continue once TRAKAmerica has informed Law Firm that the account has been recalled;

H. Law Firm shall provide TRAKAmerica with a list of specific contact personnel who will be responsible for daily management of Accounts;

I. Law Firm hereby waives any Attorney Lien or Possessory Lien as to any recalled or closed Accounts;

J. Except as may be prohibited by applicable law or ethical code, Law Firm agrees to accept all Accounts submitted to it by TRAKAmerica for collection;

K. TRAKAmerica represents that it has been authorized by its Clients to receive all monies collected and to pay all properly incurred costs and expenses on their behalf. Accordingly, in accordance with TRAKAmerica's Supplier Work Standards and applicable ethical requirements, Law Firm shall remit to TRAKAmerica all gross monies collected on behalf of Clients and submit to TRAKAmerica, for payment on behalf of Clients, invoices for all "costs and expenses" properly incurred by Law Firm during the term of this Agreement. Law Firm acknowledges that TRAKAmerica is acting solely as a representative of Clients in receiving funds and paying invoices, that TRAKAmerica itself has no independent obligation to pay such invoices, and that Law Firm has no possessory or ownership interest in any monies received in payment on accounts placed with Law Firm by TRAKAmerica for its client;

L. Law Firm shall maintain all funds received for Clients or related to the Accounts in a segregated escrow account to contain funds for TRAKAmerica Clients only. Said escrow account shall also be maintained in accordance with applicable state laws and regulations;

M. TRAKAmerica shall have the right, directly or through an authorized agent, to inspect and audit Law Firm's operations and records at any time, either electronically or in person, to determine Law Firm's compliance with the requirements of this Agreement, including, but not limited to the TRAKAmerica Supplier Work Standards. On-premises audits and inspections shall be conducted at Law Firm's expense, and shall require access to Law Firm's premises and computer network. Law Firm shall grant TRAKAmerica access to its system of record via electronic access means as prescribed by TRAKAmerica to permit remote audits. All audits and inspections may take place with or without prior notice. In addition, Law Firm must maintain a quality assurance program that identifies and implements industry best practices, including an ongoing review of work product to ensure compliance with applicable TRAKAmerica and/or Client standards, and providing reporting on such programs as requested by TRAKAmerica;

N. As stated in the TRAKAmerica Supplier Work Standards documents, the Law Firm is required to perform a search/scrub on each account including, but not limited to, bankruptcy, deceased, active military duty, or any such disposition that limits the ability of the Law Firm to proceed with collection or litigation on Accounts placed by TRAKAmerica prior to initiating collection efforts or filing suit. Each Account that is or has been the subject of a bankruptcy shall be immediately closed and returned to TRAKAmerica using the appropriate bankruptcy closing code as provided by TRAKAmerica;

O. Law Firm represents and warrants that all consumer related data will be protected at all times as required by the physical and data security requirements within the Supplier Work Standards and as prescribed by TRAKAmerica, including but not limited to PCI compliance and employee background checks. TRAKAmerica, in its discretion, may require Law Firm to engage additional measures or certifications in order to maintain compliance with client or industry specific standards related to such protection of consumer data;

P. Law Firm shall obtain and maintain membership with the National List of Attorneys, The General Bar, Inc., or the American Lawyers Company/American Lawyers Quarterly in each

state where it files suit to collect the Accounts and notify TRAKAmerica of which list it is a member of prior to receiving any Accounts under this Agreement;

Q. Failure to Perform in accordance with this Agreement or the Supplier Work Standards
i) Each time the Law Firm fails to meet a service level of any type, the Law Firm shall:

    a) investigate, assemble, report on and maintain pertinent information with respect to the problem including performing root cause analysis of the problems;
    b) as requested, advise TRAKAmerica of the status of remediation efforts undertaken with respect to the problem;
    c) minimize the impact of and correct the problem(s) to achieve renewed compliance with the standard; and
    d) take appropriate measures to ensure the problem does not recur.

ii) Law Firm recognizes that failure to meet certain service levels may have a material adverse impact on the business and operations of TRAKAmerica and/or its clients and those impacts may not be precisely determined.

iii) Accordingly, if Law Firm fails to meet certain service levels for reasons other than the wrongful acts of TRAKAmerica, then Law Firm shall be responsible for costs incurred in remedying the service level failure.

## III. PAYMENT / REMITTANCE.

In consideration of its performance of services in collecting client Accounts in accordance with the standards set forth above, Law Firm shall be paid a contingency fee on the net collections remitted by Law Firm to TRAKAmerica, in accordance with the attached "**Schedule B**". Such fee shall not be adjusted to reflect the fact that suit may have been filed on the particular Account. The term "net collections" shall mean all sums collected by Law Firm on Accounts, including but not limited to principal, interest, costs and attorney's fees, less costs and expenses which have been charged to or paid by TRAKAmerica. In the event all sums collected do not exceed the costs and expenses, there shall be no net collections and no contingency fee due on such account.

A. TRAKAmerica shall reimburse Law Firm for all reasonable costs and expenses incurred in the course of collecting on the Accounts, within forty-five (45) days of receipt of an itemized bill by TRAKAmerica. The following expenses, however, are not reimbursable absent the prior written approval of TRAKAmerica: counsel fees from any other law firm, depositions, meals, travel, hotel and related expenses;

B. The Law Firm shall bill on a regular schedule as prescribed by TRAKAmerica for any of these reasonable costs incurred, however any bill not submitted within 60 days of the date incurred shall not be eligible for payment or reimbursement;

C. The term "costs and expenses" shall include sheriff's fees, private process service fees, court filing fees, garnishment fees and other reasonable and customary costs of collection as outlined in the Supplier Work Standards;

D. Specifically excluded as reimbursable costs and expenses are photocopy charges, telephone charges, mailing charges, credit bureau charges and other overhead items;

E. Law Firm shall not charge service fees to debtors making payments, including but not limited to fees associated with telephone, check-by-phone, wires, NSF processing, Internet, e-pay, debit card, credit card or other payment mechanisms; and

F. Law Firm shall remit to TRAKAmerica all gross sums collected, together with such statements and reports as TRAKAmerica may require, on a daily basis. Law Firm shall be responsible for any loss or theft of funds collected while such funds are in its custody and/or control. Such remittances and funds shall be sent in the manner and form specified by TRAKAmerica and in accordance with the TRAKAmerica Supplier Work Standards.

G. Any disputes as to costs or contingency fees must be asserted in writing within 60 days of the transaction, payment, or submission to TRAKAmerica. Failure of the Law Firm to notify TRAKAmerica of the dispute within 60 days of expected payment of fees or costs will constitute waiver of any such claims. Additionally, Law Firm may not offset any costs or contingency fees owed against the gross sums collected under this Agreement. Law Firm acknowledges that TRAKAmerica may withhold the payment of any costs or contingency fees to the extent that TRAKAmerica's records and accounts are not reconciled with Law Firm's records and accounts, as reasonably determined by TRAKAmerica. TRAKAmerica will provide Law Firm with at least 30 days advance notice, with account detail of costs or fees, before applying fees or cost reimbursement to outstanding receivables.

H. Law Firm is responsible for all taxes relating to its employees, any taxes based on its net income or gross receipts or any taxes assessed in connection with providing services pursuant to this Agreement.

## IV. SETTLEMENT AUTHORITY.

TRAKAmerica hereby authorizes Law Firm to settle any Account for immediate payment of the applicable percentage of the then current balance, including principal, costs and accrued interest, set forth on "**Schedule C**", "Settlement Authority", as it may have been modified or supplemented by additional applicable standards or instructions from TRAKAmerica. Settlements in excess of the specified settlement authority will not require further approval. Any and all proposed settlements less than the above pre-approved settlement authority shall be submitted to TRAKAmerica in writing by Law Firm in compliance with the process defined within the Supplier Work Standards. TRAKAmerica shall endeavor to approve or reject settlement offers within ten (10) business days of submission by Law Firm, or within such lesser time as may be specified by Law Firm in its request for approval. All payment plans, settlements involving interest adjustment or any other settlement not within the scope of the above predetermined settlement authority shall be subject to the same authorization procedures.

As to the Accounts of any Client that specifies an authorized aggregate settlement rate, TRAKAmerica authorizes the acceptance of settlements either above or below such aggregate settlement percentage provided that the aggregate monthly settlement percentage achieved is at or above the Client specified rate.

TRAKAmerica reserves the right to hold Law Firm financially responsible, as liquidated damages, and not as a penalty, for the amount by which any monthly aggregate settlement amount varies from the amount which would have resulted had the minimum aggregate percentage been achieved on the settlements concluded that month or on any account(s) in which the minimum settlement percentage approved was not achieved. Any failure to achieve this minimum aggregate settlement percentage also may result in the Law Firm being required to submit all settlements for approval.

Firm must ensure that they report all settlements or payments in full no later than 14 calendar days after the final payment is posted utilizing the appropriate close and return code. Any failure to report settlements or payments in full timely may result in the Law Firm being subject to client penalties or fines.

## V. SUBSTANTIVE DENIALS, DEFENSES AND COUNTERCLAIMS.

In the event Law Firm receives correspondence from an Account debtor contesting its liability on an Account or a pleading or motion contesting liability, asserting any defense or counterclaim, or asserting a claim against the Law Firm, Client, or TRAKAmerica, arising from or related to any Account, Law Firm shall immediately notify TRAKAmerica in writing and seek further instructions before proceeding with collection efforts or prosecuting the lawsuit. In submitting such notification, Law Firm shall also make a written recommendation to TRAKAmerica, in accordance with the TRAKAmerica Supplier Work Standards, as to whether and how to proceed with the collection of the Account. Upon receipt of such notification and recommendation, TRAKAmerica shall consult with Client as to whether to proceed in accordance with Law Firm's recommendation and shall inform Law Firm of Client's decision.

Law Firm understands that counterclaims are sometimes filed by Account debtors and that many of these counterclaims are routine or without merit. Counterclaims (or other litigation) that are routine in nature, that are interposed solely for delay or tactical purposes, that are not substantive, that are frivolous, or that lack a colorable or legitimate basis are not eligible for any hourly billing. Law Firm will not be entitled to additional compensation beyond the contingency fee arrangement set forth in Section III for services rendered in responding to, defending, litigating or obtaining dismissal of such answers, defenses, motions, suits or counterclaims (or similar litigation). Law Firm will only be entitled to hourly compensation for work related to counterclaims when expressly approved in writing by TRAKAmerica or its clients. Law Firm shall not submit claims for hourly defense work when not so approved or for the sole purpose of excusing Law Firm's failure to meet performance standards. Except where services are provided by Law Firm pursuant to its obligations under Section IX below, any services rendered by Law Firm in responding to a substantive counterclaim shall be billed at an hourly rate not to exceed $150.00.

## VI. ACCOUNT DEBTOR BANKRUPTCY.

In the event Law Firm learns that the Account debtor has filed a Bankruptcy Petition under any Chapter of the United States Bankruptcy Code or has sought relief from creditors

under any state law, the Law Firm shall notify TRAKAmerica immediately and, unless directed otherwise by TRAKAmerica, immediately close the file and return it to TRAKAmerica. If TRAKAmerica receives a Notice of Bankruptcy Filing or any other bankruptcy pleading from any party other than Law Firm, TRAKAmerica shall consult with Client immediately and notify Law Firm as to how to proceed. No contingency fee shall be due or payable on any collections received by Law Firm on closed Accounts unless as prescribed within the TRAKAmerica Supplier Work Standards.

## VII. AVAILABILITY OF WITNESS.

Law Firm shall notify TRAKAmerica of the need for a Client witness at least four weeks prior to the date of a deposition or trial, or upon receipt of notification of a trial or deposition date, whichever is later. Law Firm shall make best efforts to obviate the need for such testimony through stipulations, requests for admission and other such means and to reduce the costs to Client of providing witness testimony through the use of affidavits and telephone or videotaped depositions, and to obtain reimbursement of the costs incurred in providing witness testimony. Together with its witness request, Law Firm shall advise of efforts made to reduce or shift costs to be incurred by Client in complying with such request, and shall provide a recommendation as to whether it is cost-effective to comply with such request given the amount due on the Account and the prospects for recovery. TRAKAmerica will submit such a request and recommendation to the Client immediately and inform Law Firm of Client's decision as to how to proceed. In the event Client decides not to comply with such request for a witness, the parties understand that the case may be dismissed, in which event Law Firm shall not be entitled to any compensation for time spent on the case up to such point.

Law Firm shall follow any and all client specific procedures referenced in the TRAKAmerica Supplier Work Standards.

## VIII. CONFIDENTIALITY.

All information directly or indirectly relating to Accounts submitted to Law Firm, including but not limited to personal information of debtors, and the identity of Clients serviced by TRAKAmerica shall be considered to be both confidential and proprietary. Similarly, the terms and conditions of this Agreement and TRAKAmerica's methods of doing business shall be considered confidential and proprietary. Law Firm covenants and agrees that it shall retain such information in confidence and not disclose or use such information other than in accordance with this Agreement. The covenants and agreements contained in this paragraph shall survive the termination of this Agreement.

## IX. INDEMNIFICATION.

A. Law Firm agrees to defend and indemnify TRAKAmerica and TRAKAmerica's Clients, and to hold them harmless from claims, demands, damages, costs, attorneys' fees, liabilities, expenses and losses incurred, arising out of conduct of the Law Firm or its agents in connection with the collection of the Accounts or of any particular Account by the Law Firm or its agents, including but not limited to:

1. Any actual or alleged acts or omissions of Law Firm, its agents, attorneys, representatives or employees;

2. Any actual or alleged violations by Law Firm, its agents, attorneys, representatives or employees of any applicable federal, state, or local laws and/or regulations;

3. Any actual or alleged failure of Law Firm, its agents, attorneys, representatives or employees to comply with any requirements of a governmental authority; and

4. Any failure to comply with Section II of this Agreement and/or any other breach of this Agreement.

B. TRAKAmerica may withhold contingency fees and cost reimbursement from Law Firm as necessary to satisfy Law Firm's obligations under this provision.

C. Similarly, TRAKAmerica will defend, indemnify and hold Law Firm harmless from claims, demands, liabilities, expenses and losses incurred by Law Firm, arising out of conduct of TRAKAmerica or its agents in connection with the placement of the Accounts or any particular Account with the Law Firm or its agents, including but not limited to:

1. Any actual or alleged intentional acts or negligence of TRAKAmerica, its agents, representatives or employees;

2. Any actual or alleged violations by TRAKAmerica, its agents, representatives or employees of applicable federal, state, or local laws and/or regulations; and

3. Failure of TRAKAmerica, its agents, representatives or employees to comply with any requirements of a governmental authority.

D. These indemnities survive any withdrawal, recall or termination as provided herein.

## X. INSURANCE AND LICENSING.

The Law Firm will carry, at its sole expense:

A. Worker's Compensation Insurance which shall fully comply with the statutory requirements of all applicable state and federal laws;

B. Employer's Liability Insurance with a limit of $1,000,000 per accident for bodily injury and $1,000,000 per employee/aggregate for disease;

C. Commercial General Liability Insurance with a minimum combined single limit of liability of $1,000,000 per occurrence and $2,000,000 aggregate for bodily injury, death, property damage and personal injury. This policy shall include products/completed operations coverage for at least two years after completion of services, and shall also include contractual liability coverage;

D. Excess coverage with respect to Sections B (Employer's Liability), C (General Liability), and E (Automobile Liability) with a per occurrence limit of $3,000,000;

E. Business Automobile Liability Insurance covering all owned, hired and non-owned vehicles and equipment used by Law Firm with a minimum combined single limit of liability of $1,000,000 for injury and/or death and/or property damage;

F. Professional Liability for errors and omissions insurance with a limit of $3,000,000 per claim and providing coverage for a period of at least two (2) years following completion of Services;

G. Crime and Fidelity Insurance coverage for the dishonest acts of its employees in a minimum amount of $2,000,000; and

H. All necessary collection agency licenses and bonds required by applicable law and/or state regulatory authorities; and

I. All state bar licenses necessary to practice law in the states where Law Firm collects.

At its own expense, Law Firm shall name TRAKAmerica as an additional insured on **the policies referenced in Sections C, D, and E above as follows: Data Search NY, Inc., d/b/a TRAKAmerica, 999 Vanderbilt Beach Road, Suite 607, Naples, FL 34108.** On an annual basis, commencing with the execution of this Agreement, or upon request from TRAKAmerica, or its Clients, Law Firm will provide TRAKAmerica with a Certificate of Insurance or other satisfactory evidence that such insurance policies and coverage are in effect. Law Firm shall give TRAKAmerica thirty (30) days written notice of any material change or alteration in the coverage specified in this Agreement or cancellation of any policy of insurance required within this Agreement.

Insurance coverage and limits shall be primary to insurance coverage, if any, maintained by TRAKAmerica and TRAKAmerica's clients and Law Firm shall waive subrogation against TRAKAmerica and TRAKAmerica's clients and shall cause the Law Firm's insurer(s) to waive subrogation against TRAKAmerica and TRAKAmerica's clients.

<u>Law Firm shall promptly report any claim of malpractice that TRAKAmerica or its clients make against Law Firm to their insurance carrier providing coverage for such claim of malpractice.</u>

Law Firm shall also provide TRAKAmerica with bar license numbers, state of admission, and expiration/renewal dates for attorneys at the Law Firm. On an annual basis, commencing with the execution of this Agreement, or upon request from TRAKAmerica, or its Clients, Law Firm will provide TRAKAmerica with evidence of such bar admission(s).

## XI. NOTICES.

Any notice, request, demand or other communication required or permitted hereunder, shall be in writing and shall be validly given or made to the other party if served personally, sent via certified or registered mail, postage prepaid, return receipt requested, or sent by a

nationally recognized overnight courier, addressed to the party to whom such notice, demand or other communication is given as follows:

**If to TRAKAmerica**: TRAKAmerica, 999 Vanderbilt Beach Road, Suite 607, Naples, FL 34108, Attn: Vincent P. Iacono.

**If to Law Firm**: *KIRSCHENBAUM & PHILLIPS, PC 200 HEMPSTEAD TPKE, LEVITTOWN NY 11756 4TH FL*

Electronic mail shall suffice for written notice under this Agreement provided such is sent to an officer, director, owner, partner, General Counsel, or Executive Vice President of the receiving party, and the receipt of such notice is confirmed. A party hereto may change its address for purposes of receiving notices, demands and other communications as hereinabove provided by written notice given in the manner aforesaid to the other party hereto. Notices shall be effective upon receipt as indicated on proof of transmission or delivery.

## XII. AMENDMENT OF AGREEMENT

TRAKAmerica may at any time propose an amendment to this Agreement (or to the Supplier Work Standards or to any manual or addendum therein) by notice in compliance with Section XI above. Law Firm's failure to give notice specifically rejecting such amendment within thirty days (30) shall be deemed acceptance thereof. Law Firm's rejection of such amendment shall be considered termination pursuant to Section XIII below.

## XIII. TERM OF AGREEMENT.

This Agreement may be terminated at anytime in whole or in part by either party for any reason upon thirty (30) days written notice to the other party, or immediately by TRAKAmerica in the event of Law Firm's material breach. Notwithstanding the foregoing, Law Firm shall not be permitted to withdraw from representing Clients on any specific Account where such withdrawal would materially jeopardize the prospects for recovery, including but not limited to on the eve of trial. In the event of such full or partial termination of this Agreement, the Law Firm shall return to TRAKAmerica, within thirty (30) days written notice of such request, all files relating to any and all Accounts as to which its representation has been terminated. The return of such Account files shall be without right to any additional contingency fee or any administrative fees. Law Firm hereby waives any lien in such files. Once the Agreement is terminated, the Law Firm shall have no rights to any contingency fee on any revenue collected on any recalled account. At the time the file is returned by Law Firm to TRAKAmerica, Law Firm shall provide TRAKAmerica the gross amount of all collections not theretofore remitted to TRAKAmerica and all documents and records pertaining to such Accounts shall be returned to TRAKAmerica or to the successor law firm as directed by TRAKAmerica. Law Firm shall cooperate fully with TRAKAmerica and successor counsel in the processing, transferring, or collection of files (including but not limited to signing substitutions of counsel or dismissing pending lawsuits, as requested by TRAKAmerica).

This Agreement shall remain in full force and effect until terminated as provided herein. Termination shall have no effect on the indemnity contained herein or on the continuing obligation of Law Firm concerning Accounts not withdrawn by TRAKAmerica, all of which survive any termination or withdrawal of Law Firm.

Furthermore, Law Firm and TRAKAmerica agree that this Agreement applies to all Accounts submitted by TRAKAmerica to Law Firm for Clients prior to the execution hereof. This Agreement shall supersede all prior agreements between TRAKAmerica and Law Firm.

## XIV. DISPUTE RESOLUTION

Any dispute, controversy or claim arising out of or relating to this Agreement shall first be attempted to be resolved informally and amicably for a period of at least thirty (30) days. If such resolution is not reached, the parties shall move to resolving such disputes by arbitration administered as stated below.

Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules including the Optional Rules for Emergency Measures of Protection, and judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.

The parties acknowledge that failure to perform their duties under this Agreement can cause the other party irreparable harm for which the other party will not have an adequate remedy at law. Accordingly, the parties may obtain injunctive or equable relief to prevent such harm without proving actual damages, posting a bond or security, and without prejudice to any other rights available under this Agreement or applicable law.

This agreement is made under and shall be construed according to the laws of the State of Florida without regard to its principles of conflict of laws. Both parties agree to be subject to the jurisdiction of Florida courts and that any and all claims arising from this Agreement shall be mediated, arbitrated, or litigated, as necessary, in Collier County, Florida, or any federal district court for the district in which said county is located. The prevailing party in any claim hereunder shall be entitled to its attorneys' fees and costs.

## XV. GENERAL PROVISIONS

A. Waiver. No term or provision hereof will be deemed waived or modified, and no variation of terms or provisions hereof shall be deemed consented to, unless such waiver or consent is in writing signed by the party against whom such waiver or consent is sought to be enforced. Any delay, waiver or omission by either party to exercise any right or power arising from breach or default of this Agreement by the other party shall not be construed to be a waiver by that party of any subsequent breach or default.

B. Disclaimer of Warranties. TRAKAmerica disclaims any and all representations and warranties, expressed or implied pertaining to the performance of Accounts placed

with Law Firm. Furthermore, TRAKAmerica makes no representations or warranties with respect to the quantity of Accounts placed with Law Firm or the duration of time for which the Accounts may be placed with Law Firm.

C. Quantum Merit. Law Firm agrees not to bring an action or claim in quantum merit, unjust enrichment, or any other action or claim to recover compensation for time spent on an Account or for performance under this Agreement. This applies both while the Agreement is in force and, in the event of termination, after termination of the Agreement.

D. Assignment. Law Firm may not assign, in whole or in part, any of its rights, obligations, or responsibilities under this Agreement except with the prior written consent of TRAKAmerica.

E. Third Party Beneficiary. TRAKAmerica's clients and the Account owners are intended to be third party beneficiaries under this Agreement and shall have the same rights possessed by TRAKAmerica herein.

F. Non-Solicitation. Law Firm agrees not to solicit any of TRAKAmerica's Clients for the purposes of obtaining their business outside of this Agreement. Law Firm further agrees not to solicit or offer employment to any of TRAKAmerica's employees. This applies both while the Agreement is in force and, in the event of termination, for one year after termination of the Agreement.

G. Severability. In the event any provision of this Agreement is deemed to be illegal, invalid or unenforceable for any reason, the remaining provisions of this Agreement shall be unaffected, and this Agreement shall continue in full force and effect.

H. Entire Agreement. This Agreement is the sole agreement between the parties with respect to the services stated herein, and supersedes all prior oral or written agreements for said services. This Agreement may be signed in counter-parts, either in original form or in the form of facsimile copies, all of which taken together shall constitute one instrument.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed and do each hereby warrant and represent that their respective signatory, whose signature appears below, has been and is on the date of this Agreement duly authorized by all necessary and appropriate action to execute this Agreement.

Executed this 27 day of Nov, 2011

Data Search NY, Inc., a New York corporation, d/b/a TRAKAmerica

Signature: _____
By: Vincent P. Iacono
Title: CEO

Executed this 27 day of OCT, 2011

Kirschenbaum & Phillips,
a _____ professional corporation.

Signature: _____
By: IRWIN S KIRSCHENBAUM
Title: PRES

## SCHEDULE A
## TRAKAmerica Supplier Work Standards

Attached hereto and incorporated herein.

## SCHEDULE B
## APPLICABLE CONTINGENCY FEES

Law Firm will be notified within the placement file name of the contingency fee applicable to the accounts contained in such placement file. The number in the placement file name will indicate the percentage for the contingency fee. Acceptance and loading of the placement file will constitute acceptance of the contingency fee.



Initial

## SCHEDULE C
## SETTLEMENT AUTHORITY

Settlement authority is provided at the client level and will be provided through the Client SIF Request Matrix, as updated from time-to-time, or through other written notification.